Next case, which is Cintron v. U.S. Attorney General Good morning. Good morning, and may it please the court, my name is Humberto Corrales and I represent the petitioner Natalia Cintron. I'm here to discuss two issues, whether Florida statute 893.135 is divisible and whether the Board of Immigration Appeals erred in finding that my client was not eligible for cancellation or removal. I first would like to explain why the Florida statute is not divisible. Under the Florida statute, the statute is not divisible. The way to tell whether a statute is divisible is to see how a prosecutor must charge the case and what a jury must find in order to convict. If the prosecutor must select out of the various ways of violating the statute, must pick one of those ways, and the jury must find unanimously that the defendant in the case violated the statute, then that way of finding- We have a case out there, Sparrow v. the Attorney General. We addressed the divisibility of Florida statute 893.13, which provided in relevant part that, quote, a person may not sell, manufacture, deliver, or possess with intent to sell, manufacture, or deliver a controlled substance. We held recently that that text, quote, delineates six discrete alternative elements, sale, delivery, manufacture, possession with intent to sell, possession with intent to deliver, and possession with intent to manufacture. Is that any different from what you have here? The statutes are similar, Your Honor, but the difference in the cases- So if we were to follow that analog, we would conclude that this Florida controlled substance statute was divisible rather than indivisible. Would that not be right? I say no, Your Honor, and the reason is because- I mean, if we applied that holding to this case in this statute- If that were the only way to- Right, but I'm just asking, if that were a basis, you would say, well, yeah, that's- Yes, Your Honor. Certainly a reasoned way to conclude that the statute was divisible, making the elements versus the means analysis. Yes, Your Honor, if that were the extent of the proper analysis to determine- Okay, so why would that not be at least a good starting point for the determination? It's not a bad starting point, Your Honor, but it's not the end. It's not the end of the analysis. In Spajo, the court relied on three Florida cases where the courts held that those selling manufacturing delivery were elements. In this case, we rely on two Florida cases where we can garner, after the proper application of the categorical approach, that the statute is not divisible, and the two cases I'm referring to are Burson, which are cited in the briefs, and Wright. In Burson, especially, the court referred to those different ways of violating the first element of the statute as theories, conduct, and methods, and did not refer to them as elements. Moreover, under the proper analysis of the categorical approach, as I was saying, one should look at, which this court agreed with under the case of Estrella, is you look to what the prosecutor must charge in order to sustain a conviction, and what the jury must find. If the prosecutor must charge only one of the ways of violating the statute, and the jury must agree unanimously that that is the way that the statute was violated, then it is an element, it is a divisible statute, but under the Burson and Wright, the outcome would be different. In Burson, the defendant in that case was charged with sale, and the instructions charged that the jury may convict the defendant in that case if the defendant possessed, purchased, sold, or delivered a controlled substance. The jury was not required to find unanimously on whether the defendant possessed, purchased, sold, or delivered, and in that case, they found the defendant guilty as charged. So that demonstrates that one of the requirements for a statute to be divisible was not met, which is a jury unanimity. In the case of Wright, the facts are similar. Excuse me, the defendant in that case was charged with selling, delivery, and possession, which shows that the prosecutor need not pick one of the means to the exclusion of others, as is required in Estrella, and the instructions charged that the jury can convict him if he sold, purchased, manufactured, delivered, or brought a controlled substance into Florida. And in that case, the jury entered a general verdict of guilt. Another- You look at the Florida jury instructions to prove the crime of trafficking in illegal drugs. The state must prove four elements beyond a reasonable doubt. Okay. And then if you look at, this is standard jury instruction that's been approved by the Supreme Court of Florida. And they talk about defendants knowingly sold, purchased, manufactured, delivered, brought into Florida, possessed a substance, the substance was, and then you listed the quantity of the substance involved, four grams or more, defendants knew the substance was, and let's say it was oxycodone. The instructions then require the judge to define the alternative methods of commission. Requires, was it sell, was it manufacture, was it deliver, was it possess? And the instructions contemplate an instruction only on the method of commission as applicable. And requires the prosecutor to charge a specific violation to select the relevant elements from its list. The Supreme Court has told us that a divisible statute is one in which a prosecutor charging a violation must generally select the relevant elements from its alternative list. And the jury, as instructed in the case, will make clear, must then find the elements. Why doesn't that support the proposition that this statute 893.135 is, in fact, divisible rather than indivisible? If I misapprehended the instructions, and if the answer is no, do they not also yield some insight into how Florida looks at this? Taking your correct reading of the statute, if the judge were required or the prosecutor were, well, I think that there's a difference between what the judge must instruct and what the prosecutor must charge. If the prosecutor is not required to pick one of those different ways of violating the statute under a Supreme Court law, and even under Estrella, then it's not a divisible statute. The jury instructions that we included in the appendix on page 11, this three elements, which I think more closely reflect what the defendant or the prosecutor went by at the time that Ms. Cintron was convicted, and it divides the statute into three elements. One is that the defendant knowingly sold, purchased, manufactured, delivered, or brought into the state, or possessed a certain substance. The second one requires that the prosecutor list the specific alleged substance. And then the third one requires that the amount of the substance be specifically alleged. The first element does not, or the number one does not require the prosecutor to pick one of those different ways of violating the statute. And also, if you look at the actual, assuming that the statute is divisible, you look at the actual conviction record here, you would see that Ms. Cintron was charged with the complete panoply of ways of violating the statute. Which is also an indication that the statute is indivisible, because assuming that the case had gone to trial, the jury would not have been required to find unanimously that Ms. Cintron violated- Let me ask you this question. To the extent that we were to conclude the statute was divisible rather than indivisible. The next question we would have to address is the effect of Cintron's burden of proof on the modified categorical approach. Are you going to discuss that or your colleague? I would like to discuss that briefly, Your Honor. Sure. Why don't you get right into that? Thank you very much. And I would like to explain why the Board of Immigration Appeals used the wrong standard. When someone, the only way to be excluded from qualifying, assuming you meet the other two eligibility criteria under 1229B, the only way to be excluded from qualifying for cancellation or removal is if you have been convicted of an aggravated felony. That's in the case of Carichuri Rosendo. To determine, which was not cited in the briefing, if the court wishes I can provide a supplemental on that. So once you enter into the way to determine- But if we're looking at the modified categorical approach, then we're going to expand our inquiry and look at a variety of documents in the record of conviction including the charging document, the plea agreement if there be one, the plea colloquy transcript if there be one, undisputed facts perhaps in the pre-sentence investigative report, etc. In this case, whatever else you can agree on, all of you agree that based on the record that we have, it doesn't yield an answer to the question, right? Yes, Your Honor. So long as the burden of proof is yours then, why would not the BIA have been right that you had failed to carry your burden? Once we were looking at it, if we were to look at it under a modified categorical approach. Because under the categorical approach, the categorical approach does not rely on whose burden it is. No, no, no, no. I said once we get beyond, if we were to disagree with your argument about divisibility. And then we got to the second question of whether or not you met your burden of proof. You would not have met your burden of proof, would you? Yes, and the simple answer- You would have met your burden? Would have met our burden of proof because under this third prong of the cancellation statute, the way to meet your burden of proof is that under the modified categorical approach, the non-citizen has not been convicted of an aggravated felony. So when you employ the modified categorical approach, you do not consider the burden of proof within the categorical approach. Do we not apply the burden of proof application to the modified categorical approach? You do not, your honor. Well, four circuits have said you do, the fourth, the seventh, the ninth, and the tenth. I've suggested that we ought to be doing that. There's contrary law as well, but why would those four circuits have been wrong in suggesting that if you're applying the modified categorical approach, you look to the burden and who's got it, and the petitioner has it? The reason- Why is that wrong is what I'm asking. Because they did not correctly apply the categorical approach, which is what leads to the answer of whether someone has or has not been convicted of a disqualifying offense. In this case, an aggravated felony.  Inquiry is the same whether you're employing the categorical approach or you're employing the modified categorical approach. Under the categorical approach, the inquiry is, what does the prosecutor necessarily have to prove to sustain a conviction? Similarly, under the modified categorical approach, and I think this is the point of contention with the government, is that they're saying that the same presumption of the least acts criminalized does not apply in the modified categorical approach. I'd like to explain why. In Taylor and in Mathis, the Supreme Court said, under the modified categorical approach, the inquiry is looking at the conviction record. What would the jury necessarily have to have found in order to convict the defendant? So the nature of the inquiry is the same, what the jury necessarily had to find to convict. Because inquiry is the same, the necessary language, you always assume that the person is convicted of the least culpable conduct. Because Ms. Enthron was charged with the panoply of the Florida statute, if assuming that the statute is divisible, we're applying the modified categorical approach. If the jury, if the case had gone to trial based on the conviction record, what, and viewing the conviction record, when we ask ourselves, what would the jury necessarily have to have found under this conviction record to convict Ms. Enthron? Because the least culpable conduct in the statute is possession, then possession does not qualify. All right, I don't mean to cut you off, but you've gone over your time limit. If you want to reserve your full three minutes for rebuttal, we've given your colleague a chance to be heard as amicus. Good morning. Good morning, Your Honor. May it please the court, Aaron Scherzer for the amici. If the court finds that this statute is divisible and thus reaches the Moncrief issue, it should hold that petitioner's conviction is not a disqualifying aggravated felony. What's your best authority for this position? The best authority is the Supreme Court's on-point decision in Moncrief. The government argues that Moncrief is just a removal case, not a cancellation case. But that's not correct, and that's dispositive here. I'd like to walk you through exactly why that's the case. The Supreme Court explained in Moncrief that Adrienne Moncrief had been ordered deported under two separate grounds, the first as a controlled substances offender and the second as an aggravated felon. And the court explained in the first two paragraphs of Moncrief that it was undisputed that Adrienne Moncrief was removable either way as a controlled substances offender. But it said the question of whether he was an aggravated felon was still relevant because that would govern whether he was eligible to apply for discretionary relief. And then it applied that analysis at 1692 of the opinion when it said, having been found not to be an aggravated felon, full stop, the court didn't qualify that, Mr. Moncrief is eligible to apply for discretionary relief, quote, assuming he satisfies the other eligibility criteria. And then it cited the criteria having to do with years of presence in the country, but not the criteria having to do with absence of a disqualifying conviction. But is there not an important distinction to be drawn from the fact that Moncrief, the holder, was exploring the issue in the context of a categorical approach, and it makes all the sense in the world that the answer would be a legal rather than a factual one when you're looking at the categorical approach. But Moncrief seems to me to be limited, and maybe I've misapprehended it, to reaching a conclusion about a case that arises under the categorical approach. And what you arguably have here, depending on how we address divisibility versus indivisibility, which is not an easy question for me, but if we were to say that you folks are wrong about that question and apply a modified categorical approach, why would Moncrief provide the rule of decision when it was a categorical, not a modified categorical approach? If it's modified categorical, isn't this so fact-specific and fact-laden that the burdens of proof ought to rest properly with the petitioner, just like the Fourth, the Seventh, the Ninth, and the Tenth Circuits held? Three points on that, Your Honor. The first is that this court in Denawa already explained that the modified categorical approach applies the least-acts criminalized presumption in exactly the same way as the categorical approach. And that makes sense because the Supreme Court in DeKalb explained that the modified categorical approach is not an exception to the categorical approach, but merely a tool to implement it. And it said that the modified categorical approach is not a modified factual inquiry, it's not an evidence-based inquiry, but rather it applies the same basic methods and answers the same basic question as the categorical approach. And that question is, was the non-citizen necessarily convicted of the disqualifying offense? She doesn't have to show that she was convicted of possession, she just has to show that she was not necessarily convicted of the disqualifying offense. And then the Supreme Court itself in Moncrief at 1684, in the very sentence directly after setting forth the least-acts criminalized presumption, set forth the modified categorical approach as a qualification to that presumption. It's the way to rebut the presumption, but it does not operate outside it. So this court has recognized that. So you believe the Fourth, Seventh, Ninth, and Tenth just got it wrong? The Fourth, Ninth, and Tenth circuits were pre-Moncrief decisions, so they didn't have the benefit of the Supreme Court's decision in Moncrief. The only court to have grappled with this decision post-Moncrief is the First Circuit in Sauceda, which the government asked this court to create a square split with. The Seventh Circuit in Sanchez was applying a circumstance-specific inquiry, which is not the modified categorical inquiry. A circumstance-specific inquiry is a factual inquiry, as the court explained in Nijewan. But a modified categorical inquiry is, as the First Circuit said in Sauceda, a purely legal inquiry. I know that's the question I'm having trouble with, because it looks to me that insofar as the modified categorical approach says, now we're going to look at some specific data, specific factual data, including the charging instrument, the plea of guilty, the text of the plea allocution itself, the transcript. This is very fact-specific kind of stuff that you'd look at. Doesn't that suggest it's more of a fact-based inquiry than a purely legal one? Because if we're applying a modified categorical approach and there's a body of data out there, we're asking the trial court to look at that body of data and tell us what it means to infer facts from that. Why isn't that fact-based rather than what you would characterize as a purely legal determination? Because there's no doubt that there are documents involved in this inquiry. That's of course not at dispute, as distinct from the categorical inquiry. Of course in the modified- Not only are there documents, but when you look, for example, at a plea colloquy, a transcript that may be very extensive, how you interpret that is so specific, factual in nature that you're asking the trial court to say, all right, what do these findings amount to? Give us a finding about what went down in the trial court. And there could be a factual dispute as to what the record meant. Here, there is no dispute because the parties agree that the record of conviction is ambiguous. And once you've reached that- We don't have the records. The point is the record is barren here. We just don't know. But we're talking about who has the burden. And if the petitioner has the burden, and the burden is fact-laden, then why wouldn't it be fair to say that you lose? The way we would any time that the burden by law is imposed on one side and it's unable to meet it. So the petitioner certainly has the general burden as the cancellation. And that burden applies with great force to the deeply factual questions that are involved in the cancellation of removal inquiry, like years of presence in the country and like continuous presence in the country. But as to this question of what an ambiguous record necessarily establishes, Moncrief changed the analysis. And it said the question is, was the non-citizen necessarily convicted of the disqualifying offense? Not what was she convicted of, but was she necessarily convicted of the disqualifying offense? And DeKalb said this is not a modified factual or evidentiary inquiry, but merely a tool to implement the categorical approach. And the First Circuit in Sauceda explicitly recognized that this was not a factual inquiry, but rather a purely legal inquiry, quoting Mullooly, quoting Mathis, which of course also said that this was a legal inquiry. Thank you. Doesn't this question turn on what you're looking for in the record as opposed to what the facts are? In other words, what you're looking for is evidence of the conviction, nature of the conviction. Is that right? That's right. What the court must determine is whether she was necessarily convicted of the disqualifying offense. The court presumes going in that she was convicted of the least of the acts criminalized, which was he or possession. And all parties agree that that's not a disqualifying offense. And all parties further agree, as the government again reaffirmed at page two of its supplemental letter brief, that the record of conviction here is ambiguous as to which prong she was convicted under. So the question is solely, was she necessarily convicted of the disqualifying offense? Is that a legal question or a factual question? That is a legal question. And Congress could not have intended that a noncitizen be forced to prove the unprovable. Here, of course, at the discretionary phase of the cancellation and removal inquiry, a noncitizen can introduce all manner of evidence, can introduce her testimony as she did here at the discretionary phase, which the immigration judge found compelling. But at the threshold stage, she's limited only to the Shepard documents. And that's part of the reason why this is a legal inquiry as the First Circuit held in Sauceda and why this court in Denawa applied Moncrief's presumption in a categorical case, in a modified categorical case, in the cancellation and removal context. Thank you. Thank you, Your Honor. Make you thank the court for the opportunity to participate in this argument. Good morning. Good morning. May it please the court. I'm Christina Greer on behalf of the United States Attorney General. There are two issues in this case. First, the language of Ms. Cintron's statute of conviction, state case law, pattern jury instructions, and this court's decision in Spajo dictate that Ms. Cintron's statute of conviction is divisible. Second, which of the actus rea Ms. Cintron was convicted of is a factual question that she has the burden to establish by statute. Because she has not done so, she has not established that she was not convicted of an aggravated felony for cancellation purposes. Regarding the first issue, under Mathis, for a statute to be divisible, it must set forth alternative elements in the disjunctive that constitute individual crimes. Mathis defines facts versus elements. It defines facts as real world things extraneous to the crime's legal requirements. They are circumstances or events having no legal effect or consequence. The actus rea here are not facts. They are elements. Elements are those things at trial that are what the jury must find beyond a reasonable doubt to convict the defendant. And at a plea hearing, they are what the defendant necessarily admits when he pleads guilty. As I said here, state case law, the pattern jury instructions, and Spajo all point to this statute being divisible. In Berson v. State, the defendant was charged only with sale, but the jury was instructed on additional elements including purchase and possession, which he could not have been convicted of because he had a valid prescription. The case not only shows that the alternatives are charged individually, but also that they constitute different offenses because there are affirmative defenses, sorry, they constitute different offenses because there are affirmative defenses to specific alternatives. Additionally, the pattern jury instructions, which are set forth in pages 32 and 33 of the government's brief, treat the alternative actus rea similarly to how it treats the different controlled substances, which are separate elements underneath this statute. They are defined separately under different subsections, in fact. The pattern jury instructions treat the different actus rea the same way as it treats the different controlled substances. Let me ask you a question about this statute, and one of the reasons for me that it's a hard question. If you look at the actual language in 893.1351C, it says any person who knowingly sells, purchases, manufactures, delivers, brings into the state, or is knowingly in actual or constructive possession of four grams or more of oxycodone commits a felony of the first degree, which felony shall be known as trafficking in illegal drugs. The fact that the statute specifies that all of these may be seen as methods of committing a single offense to a trafficking in illegal drugs would suggest, would it not, that selling, purchasing, manufacturing, delivering, bringing into the state, and possessing are all methods or means of accomplishing trafficking rather than as separate elements creating distinct offenses? That could be one indication. However, how the state actually defines- It seems to me that's the biggest hurdle you face, interpretive hurdle here. Yes, but the question is not necessarily how it's the language of the statute itself, it's also how it's actually treated by state courts, by prosecutors. And additionally, as you noted earlier, this court's recent decision in Spaho dealt with an analytically and linguistically similar statute and found that that statute was also divisible. And this statute, I believe, except for possession with intent to distribute, manufacture, is linguistically identical in its phrasing of the Actus Rea elements. How do you get around the Moncrief case? That's what your opponent is relying upon. Regarding the second issue, the- On the second issue. So, Moncrief dealt with the categorical approach. It was a removal case, which is important, but more so it deals with the categorical approach. The categorical approach can be applied twice in the overall analysis of whether a crime constitutes- or a state offense constitutes a generic offense. The first step is to apply the categorical approach comparing the elements of the statute with the generic offense. Here, the statute's overbroad and we argue it is divisible. And so then the question becomes, well, which of those elements was she convicted of? And that is different than Moncrief. In Moncrief, they knew what he was convicted of. The court knew that he was convicted of possession, or I believe it was delivery, but they knew which of the elements he was convicted of. That was not a question. We have that question here. We need to know which of the six options Ms. Cintron was convicted of so that we can then reapply the categorical approach to that element or those elements that she was convicted of. Of course, when you look at the documents, you can't find any answer, right? Correct. The documents do not show. We have the indictment and then the judge- If she was convicted of possession, she loses. If she was convicted of possession, then she wins. But we don't know what happens here. We don't know what happened. That's correct. Let me go back to where I started with the statute, the language here. Unlike SPAHO, the language here has, at the very end, after you lay out all these other things, which shall be known as trafficking in illegal drugs, punishable as provided in sections, blah, blah, and blah. You don't have that in the language dealing with SPAHO, right? Correct. Yes, Your Honor. Isn't that a statutory distinction of some moment? It is a statutory distinction, but as the Supreme Court has repeatedly noted in its cases about the categorical and modified categorical approach, it's not the name of the statute that determines whether it constitutes a conviction. So while this offense may be named trafficking in illegal drugs, that doesn't determine whether it's divisible because this does set forth six different actus rea in the disjunctive that are treated separately, that are charged separately in case law. While the title of the – I essentially see trafficking in illegal drugs as the title of the statute. Although, interestingly enough, we're not talking about the title. We're talking about the text of the statute itself. Yes, and I'm saying it's analytically similar to a title of the offense, even though it's not the title of the statute. Tell me about how Florida law illuminates the issue. So in both Burson and Wright, they're both jury instruction cases, and they indicate that the actus rea each constitutes separate crimes because they're charged and instructed separately and because there are affirmative defenses to at least two of the elements. If one has a prescription, one cannot be convicted of possession or purchase as shown in Burson. And in Wright, the issue was that the defendant was not charged with bringing into a state, but the jury was instructed with bringing into a state. If these are facts merely and means, then under Mathis, these are purely real-world things that are extraneous to a crime's legal requirements. The state cases here don't show that.  was something extraneous that's just a circumstance or an event having no legal effect or consequence. Therefore, these are elements and not just different means of committing the offense. It's not akin to whether it was a house or a vehicle. It's specifically the conduct at issue here, which are charged separately, defined separately in the jury instructions, and instructed separately to the jury. But in both Burson and Wright, the juries returned a general verdict that said the defendant was guilty as charged, and the charged conduct included all of the various acts. Isn't that right? Selling as well as possession. Yes, it did. Why doesn't that indicate that the statute isn't divisible? First, in both Burson and Wright, the question was fundamental error because the issues raised weren't. They were both instruction issues, which had the contemporaneous objection rule, and so because those weren't objected to, the question was fundamental error that so flawed the proceedings that reversal was necessary. And neither Burson nor Wright challenged the use of the general verdict form, so it's not known whether that would be improper. The issue in those cases, though, was because the jury instructions didn't match the indictment, right? Yes. So that's a different issue. It is. It's a different issue, and neither the court didn't make any holdings regarding the use of the general verdict form there. So your view is Burson doesn't really shed any light on this question? It does still shed light on the question. Tell me how it does. The fact that there are affirmative defenses to two of these options and the fact that he should have only been or the jury should have only been instructed with sale instead of any of the other options shows not only that the prosecution does charge these individually, but also that these are treated as different elements. I've never heard of an affirmative defense to whether it was a house or a boat when it comes to burglary, but these are separate affirmative defenses specifically to individual options or alternative actus rea here. What about the instructions? Do they help us find an answer? Yes, they do, Your Honor. The instructions, as I stated earlier, they set forth all six of the actus rea the same way they set forth the controlled substances. And from the statute, we know that the identity of the controlled substance is an element. Each separate controlled substance is set forth in a different subsection. Oxycodone here was set forth at subsection C1. The jury instruction form or the pattern jury instructions set forth each controlled substance by a bracket and it treats the actus rea the same way. It sets them separately in brackets. Additionally, it says further down the pattern jury instructions, give as necessary under the definitions and showing that the prosecution or the court gives the jury instructions specifically on the different options charged. And that indicates that these are separate elements that have to be charged, not real world facts, not things extraneous to the legal consequences of this offense. What's your response to Mr. Corrales' argument about the jury instructions, that it shows three elements? So the jury instructions state that three elements are required, but how the state defines the word element is not necessarily the same as how the Supreme Court defines the word element. That's one thing that was discussed in Mathis. Just because a state court calls it an element, calls it a means, doesn't mean that that's how they treat it under the definitions set forth in Mathis. And that's the case here. If that were the case, or if the jury instructions saying there are three elements holds and dictates the outcome here, then that would also mean that the controlled substance subsection sets forth means and not elements, even though those are set forth separately in individual subsections of the statute and are considered to be different crimes. And so the definition that the state uses is not controlling as to how it's actually treated in the real world. You distinguish the Moncrief because it just had a categorical approach. Has any court said anything about it in a modified categorical approach since the Moncrief case? Sauceda discussed the use of Moncrief in the modified categorical approach. And Sauceda did adopt Amici's argument regarding the effect of Moncrief. You're just saying that's wrong? Yes. The government does believe that is wrong. Moncrief just deals with the categorical approach. And I like to think of it as there are three different steps when it comes to comparing a statute with a generic offense. And the first one is apply the categorical approach. If the statute that the person was convicted of has too many options and some aren't categorically the generic offense, then we move to divisibility to determine whether the statute is divisible, which is our first issue here. If it is divisible, then we need to know which of those options that person was convicted of. And then we can reapply the categorical approach. Those two last steps there are what is generally termed the modified categorical approach. So while the modified categorical approach is a legal inquiry, it's also a factual inquiry because we first need to know what the person was convicted of so that we can compare the elements. If we don't know which elements, like here, we don't know which elements Ms. Cintron was convicted of, so we don't know what to compare to illicit trafficking. We don't know if she was convicted of purchase or delivery or sale. And the statute places the burden on her to prove she was not convicted of an aggravated felony. And that's one thing that I would like to note is here the government isn't saying that she has been convicted of an aggravated felony. The government is saying she has not proved that she hasn't been. You're basing it on the burden of proof. Yes, Your Honor. That's because it's in the civil proceedings. It's because at 8 U.S.C. 1229 A.C. 4A.I., the statute says that an alien applying for relief or protection from removal has the burden of proof to establish that she satisfies the eligibility requirements. And then the cancellation of removal statute says that the attorney general may cancel the removal of any alien who has not been convicted of an aggravated felony. So she has the burden to produce the records to show that she has not been convicted of an aggravated felony. Did she have the burden of proof in the Moncrief case? Or he, whoever Moncrief was? No, he did not. He did not have the burden of proof there. But even there, in Moncrief it was a completely legal inquiry because we know what Moncrief was convicted of. We didn't have to go into this factual which option. They knew which option he was convicted of. And so then the court was able to compare the two, the option that he was, or the elements he was convicted of to the generic offense. Whereas we have one more step here. We need to figure out what she was convicted of so we can do that comparison. And so if we knew which option she was convicted of, then we would be in the exact same place Moncrief is. But we don't. And that's how this case is different from Moncrief. Did this court say anything about that in the Danawa case? This court? So in Danawa, the court didn't really deal with this issue in Danawa. It said that still at the modified categorical, we apply the least of the acts. And that's true when we get to the legal step of the modified categorical, when we reapply the categorical approach to the actual elements of the offense. For example, if a marijuana statute in Florida was the same as the one in Moncrief, and we get to the modified categorical approach, we'd still just be doing what Moncrief did. We're reapplying the categorical, but this time to the elements that the person was convicted of. So we agree with Danawa that the least of the acts is a part of the categorical approach, but we're not to that yet because we don't know what she was convicted of. So we don't know which of those elements to apply the categorical approach to. Amici suggests that this presumption of the least of the acts that comes from the very first step of the categorical approach somehow colors the entire inquiry, but that's not supported by case law. First of all, in Mathis and DeCamp, which both directly dealt with divisibility and the modified categorical approach and both came after Moncrief, the least of the acts is not discussed. That is only a question where we are applying the categorical approach and we're trying to figure out what was it the person was necessarily convicted of. No sort of presumption of the least of the acts criminalized by the overall statute flows into the modified categorical approach as we're trying to apply it here. It's used to determine what a state crime covers. It's not a legal presumption that somehow shifts the burden back and forth between the parties. If there are no further questions, I'll quickly conclude. Thanks very much. Thank you. Mr. Corrales, you've reserved three minutes. Your Honor, I have four quick points. I have just one short question. Is it not a fact-based inquiry to determine what she was convicted of? It is not a fact-based inquiry, Your Honor, under the categorical approach. No, no, I forget any approach we're talking about. Just hold aside the labels we pasted on it. If a court is required to answer a question, the trial court is asked, what was Jones convicted of? And an inquiry has to be made to answer that question. Is not the answer to that question a fact-based question? Isn't that a fact that the court has to find? She was convicted of X, Y, or Z. You'd look at the charging instrument. If it was a trial, you'd look at the verdict form and maybe the questions that were put. You'd look at the judgment and commitment form, the ultimate judgment the court entered at the end, and you would reach a determination about was she convicted of A or B or C. Why isn't that a fact-based question? Because even answering that question, usually someone does not ask, well, what was she convicted of having done? Was she convicted of breaking into a house and stealing furniture? You ask, well, what was she convicted of? She was convicted of burglary. You usually apply a general label to what the person was convicted of. No, well, for example, we see all the time in this court a 404B analysis question. The government tries to put in at a trial other prior crimes to show identity, absence of mistake, intent, whatever. And among the things the trial court must answer is what, in fact, was the defendant convicted of? And then you'd look to see whether that fact of conviction was close enough to the issues in the trial to determine whether or not it went honestly to motive, intent, et cetera. I'm just trying to get at whether or not when you scrape it down to its essential point, this isn't a fact-based inquiry to discern what someone was convicted of. No, Your Honor, I think it is not a fact-based inquiry for the same reason we are trying to, well, if you look, talking about, to be honest, I'm not too familiar with 404 requirements, Your Honor. Well, all 404B aside, I'm just asking whether this isn't fact-based. This is not a, under the categorical approach, it is not a fact-based inquiry, definitely. The nature of the inquiry is to find, well, first, whether the statute is divisible. And if the statute is divisible, what was the person necessarily convicted of? What element in a divisible statute was the person necessarily convicted of? And the Supreme Court has said it over and over again, it does not matter what the person actually did. That's not, because that is not the inquiry. The inquiry is what was the person necessarily convicted of? And I disagree with the government that under the modified categorical approach, the inquiry is not the same and the presumption is not applied. Again, for the, Donovan said that the presumption applies, Your Honor, and the presumption is, again, looking at the conviction record, the question is what would the jury would have to have found in order to convict the defendant? And what would they have to have found is which element, which is of the necessary elements to convict would they have to have found? And because it's an inquiry into the, it's a necessary inquiry, you assume the least culpable conduct. And I think also... If you can bring your remarks to a conclusion because you're sort of over your rebuttal time. Oh, okay, Your Honor. Of course. Thank you very much. Just wanted you to bring it to a head if you could. Yes, I could, Your Honor. Thank you very much. And the government's approach would apply the categorical approach in this way, the modified categorical approach in this way. You have a divisible statute. The record is ambiguous. Therefore, because the record is ambiguous and the noncitizen is applying for relief, you have to assume that she was convicted of the disqualifying offense because that is the only way that you would be disqualified for cancellation removal if you're convicted under Carta 2D Rosendo. Thank you very much. Thank you. Thank you both for your efforts. This court will be adjourned. Thank you.